UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

| | |
|---|---|
| In re:<br><br>LESLIE ACEVEDO<br><br>    Debtor | Chapter 11<br>Case No. 10-43723 -MSH |
| LESLIE ACEVEDO<br><br>    Plaintiff<br><br>v.<br><br>WELLS FARGO BANK, N.A., AS<br>TRUSTEE OF OPTION ONE<br>MORTGAGE LOAN TRUST 2007-FXD1<br>ASSET BACKED CERTIFICATES,<br>SERIES 2007-FXD1<br><br>    Defendant | Adversary Proceeding<br>No. 10-4145 |

**MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

The defendant, Wells Fargo Bank, in its capacity as trustee of Option One Mortgage Loan Trust 2007-FXD1 Asset-Backed Certificates, Series 2007-FXD1, seeks summary judgment dismissing the two-count complaint filed by the plaintiff-debtor, Leslie Acevedo. In this adversary proceeding Ms. Acevedo, who opposes summary judgment, seeks rescission of a loan originated by Option One Mortgage Corporation,[1] currently owned by the trust of which Wells Fargo is trustee, as well as avoidance of the mortgage securing her obligations thereunder, a return of all points and fees she paid at closing, and statutory damages based on Option One's

---

[1] Option One Mortgage Corporation is now known as Sand Canyon Corporation.

1

alleged failure to correctly disclose its finance charges as required by the Massachusetts Consumer Credit Cost Disclosure Act (the "MCCCDA") MASS. GEN. LAWS ch. 140D. Ms. Acevedo also objected to Wells Fargo's proof of claim and amended proof of claim filed in the main case. Because this litigation bears directly on Ms. Acevedo's claims objections, I consolidated the claims objections with this adversary proceeding.

## Background

Except as otherwise noted, the facts are drawn from those allegations and exhibits in the complaint admitted by Wells Fargo in its answer, as well as from the affidavit of Mark DiFonte, Option One's closing attorney, the documents attached to the affidavit of Joseph Butler, counsel for Wells Fargo, and the documents attached to the affidavit of Laird Heal, counsel for Ms. Acevedo.

On October 19, 2006, Ms. Acevedo refinanced with Option One a loan secured by a multi-unit dwelling located at 13 Thenius Street, Worcester, Massachusetts (the "Property").[2] The refinanced loan was evidenced by a promissory note in the original principal amount of $275,000 bearing interest at 7.890% per annum. Ms. Acevedo's obligations under the note were secured by a first mortgage on the Property in favor of Option One. American Home Servicing,

---

[2] Ms. Acevedo does not actually allege that at the time of the loan refinancing the Property was her primary residence, an essential condition for MCCCDA applicability. *See* MASS. GEN. LAWS ch. 104D, §10(a). In her complaint Ms. Acevedo has acknowledged that she filed a declaration of homestead on property located at 8 Maxwell Street, Worcester, Massachusetts on July 26, 2010 and in response to question 20 of the interrogatories propounded to her by Wells Fargo and attached to the Butler affidavit, Ms. Acevedo answered that she signed a mortgage on the Maxwell Street property on or about January 25, 2007. Wells Fargo has not disputed that MCCCDA is applicable to this proceeding, leading me to conclude that the Property was Ms. Acevedo's primary residence when the refinancing was consummated in 2006.

2

Inc., as successor in interest to Option One, assigned the mortgage to Wells Fargo. Both the mortgage and the assignment were duly recorded.

While the note's term was thirty years, monthly payments were based on a forty-year amortization schedule with a balloon payment at maturity. The balloon payment was subject to a "Balloon Payment Addendum" which, among other things, granted Ms. Acevedo the right at maturity of the note to refinance the balloon payment with the noteholder if certain conditions were satisfied. In addition to Ms. Acevedo's continued ownership of the Property and her timely notifying the lender in writing of her intent to exercise the refinancing option, her right to refinance the note balance at maturity was contingent upon her being current in her monthly payments and not having been more than 30 days late on any of the 12 scheduled monthly payments immediately preceding the note's maturity date. The addendum also established the parameters for calculating the fixed interest rate for a new note. That rate, to be determined at the time Ms. Acevedo gave notice of her intent to exercise her election to refinance, would be

> equal to Fannie Mae's required net yield for 30-year fixed rate mortgages subject to a 60-day mandatory delivery commitment, plus one-half of one percentage point (0.5%), rounded to the nearest one-eighth of one percentage point (0.125%) (the New Note Rate). The request [sic] net yield shall be the applicable net yield in effect on the date and time of day that the Note Holder receives my election to exercise the Conditional Refinancing Option. If this required net yield is not available, the Note Holder will determine the New Note Rate by using comparable information.

In connection with the refinance transaction, Option One, which coincidentally held the note that was to be paid off as part of the refinance, provided to Ms. Acevedo a "Prior Mortgage Payoff Statement" dated October 17, 2006 that reflected a payoff amount for the existing loan of

3

$264,627.20 which payoff amount was good through October 23, 2006. The Payoff Statement provided by Option One included a $75 charge described as "Recording Fees."[3]

Option One, through its closing agent and attorney, Mark DiFonte, prepared a HUD-1 Settlement Statement for the refinance transaction which Ms. Acevedo signed at the closing on October 19, 2006. Line 104 of the HUD-1 shows a payment from the loan proceeds to Option One of $264,915.30, an amount that is $288.10 greater than the figure reflected in the October 17, 2006 Payoff Statement. Line 1200 of the HUD-1 is a section heading entitled "Government Recording and Transfer Charges" that applies to lines 1201 through 1205 below it. On line 1201 of the HUD-1 entitled "Recording Fees," next to the word "Mortgage" the amount $175 is inserted, next to the word "Releases" the amount $75 is inserted and the total "$250" is inserted at the far right of the line in a column entitled "Paid from Borrowers Funds at Settlement" (sic). On line 1303 of the HUD-1, next to the words "Final Rundown and Record to" is inserted "DiFonte & Panaglotidis, LLC" and "$75." In his affidavit Mr. DiFonte testified:

> The $75 charge listed on the HUD-1 Settlement Statement at Line 1201 was charged to the borrower as a discharge tracking fee to ensure the discharge of the mortgage paid off at closing was recorded and that Option One's mortgage was in the first lien position. This fee was approved by Option One who directed that it be placed in line 1201 for HUD Approval [sic].

At some point, Ms Acevedo fell behind on her loan payments and on May 21, 2010, Wells Fargo commenced an action in Massachusetts Land Court pursuant to the Servicemembers Civil Relief Act, 50 U.S.App. § 501 *et seq.* (2004) which by Massachusetts law is a prerequisite to foreclosing most mortgages. Wells Fargo sent Ms. Acevedo a notice, dated June 25, 2010,

---

[3] I take judicial notice that the cost to record an instrument of discharge of a mortgage in Worcester County at that time of the refinance transaction was $75.00.

4

stating that it intended to conduct a foreclosure sale of the Property on July 27, 2010. On July 26, 2010, Ms. Acevedo filed her voluntary chapter 11 petition commencing the main case.

Wells Fargo filed a secured proof of claim in the main case on August 24, 2010. On September 22, 2010, Ms. Acevedo filed an objection to Wells Fargo's proof of claim disputing the amount of the claim and asserting that the claim was partially unsecured. She also challenged Wells Fargo's right to enforce its note. Shortly thereafter, Ms. Acevedo signed and sent to Wells Fargo's attorneys a notice of right to cancel, dated October 16, 2010, ("Rescission Notice") purporting to rescind the 2006 loan. On October 19, 2010, she commenced this adversary proceeding.

In April 2011, Wells Fargo filed a motion for relief from the automatic stay in the main chapter 11 case seeking leave to proceed with the foreclosure of its mortgage on the Property. Ms. Acevedo did not oppose the motion and on May 19, 2011 an order granting Wells Fargo relief from the automatic stay entered. On August 18, 2011, Wells Fargo conducted a foreclosure sale of the Property and was the successful bidder with a bid of $95,000. On September 19, 2011, Wells Fargo recorded its foreclosure deed at the Worcester (South) District Registry of Deeds.

On October 7, 2011, Specialized Loan Servicing, LLC amended Wells Fargo's filed proof of claim to assert an unsecured claim apparently representing the unpaid deficiency arising after the foreclosure sale.[4] On October 24, 2011 Ms. Acevedo amended her objection to Wells

---

[4] On September 23, 2011, Ms. Acevedo filed a motion to amend her complaint in this adversary proceeding. Wells Fargo objected. A hearing was scheduled on the motion to amend but before the hearing Ms. Acevedo effectively withdrew her motion by initiating a second adversary proceeding (A.P. #11-4129) (the "Second Adversary Proceeding") against Wells Fargo, Specialized Loan Servicing, LLC, Specialized Asset Management, LLC and the individual

Fargo's claim to allege that Wells Fargo's claim should be disallowed because she had rescinded the loan giving rise to the claim. As stated previously, the objections to the proofs of claim have been consolidated with this adversary proceeding.

## Bankruptcy Court Authority

In her complaint Ms. Acevedo avers that the claims asserted in this adversary proceeding are within the court's core jurisdiction under 28 U.S.C. § 157. In its answer Wells Fargo, while admitting that some of the claims are core, alleges without any specificity that others are not. In seeking summary judgment on all counts of the complaint, however, Wells Fargo has not requested that I submit proposed findings and rulings as would be appropriate in non-core matters under 28 U.S.C. § 157(c)(1) and Fed. R. Bankr. P. 9033, nor has it argued that I lack authority under Article III of the United States Constitution to enter a final order in this proceeding.[5] Wells Fargo has thus agreed implicitly to the entry of a final order by this court. *In*

---

tenants residing at the Property. The tenants were dismissed from the action after Ms. Acevedo failed to respond to an order to show cause why they should not be dismissed. In the Second Adversary Proceeding she seeks, among other things: (i) an order setting aside the foreclosure sale of the Property on the grounds that it was not conducted in a commercially reasonable manner, including that notice had been improper and that an inadequate price had been paid, and in any event that the loan secured by the mortgage had been rescinded; (ii) an accounting of rents collected by Wells Fargo or its agent; (iii) an injunction preventing the defendants from interfering with her use and enjoyment of the Property; and (iv) an award of damages for violation of the automatic stay, infliction of emotional distress and violations of MASS. GEN. LAWS ch. 93A. Wells Fargo has denied the allegations in the Second Adversary Proceeding.

[5] To the extent any causes of action in the complaint or claims objections are deemed "counterclaims by the estate against persons filing claims against the estate," and are thus core proceedings under 28 U.S.C. § 157(b)(2)(C), the Supreme Court's decision in *Stern v. Marshall*, ⎯ U.S. ⎯, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011), cannot go unmentioned. In *Stern*, the Court ruled that 28 U.S.C. § 157(b)(2)(C) was unconstitutional insofar as it authorized bankruptcy judges, appointed under Article I of the U.S. Constitution, to exercise the judicial power of the United States by entering final orders on state law counterclaims against creditors who file proofs of claim in a bankruptcy case because such power may be exercised only by

*re GSF Corp.*, 938 F.2d 1467, 1477 (1st Cir. 1991). In any event, if on appeal the district court were to disagree with the characterization of any counts as core, it may, pursuant to its local rules, treat the court's ruling as proposed findings of fact and conclusions of law. LR, D. Mass. 206. Of course, an order denying summary judgment is not final and therefore as long as a bankruptcy court has related-to jurisdiction, it can enter interlocutory orders even without the consent of the parties. *Philadelphia Newspapers, LLC v. Review Publishing, LP. (In re Philadelphia Newspapers, LLC)*, 2009 WL 7400048, at *5 (Bankr. E.D.Pa. Dec. 17, 2009).

## Statutory and Regulatory Framework

The MCCCDA and its accompanying regulations were closely modeled on the federal Truth in Lending Act ("TILA") (15 U.S.C. § 1601 et seq.) and Regulation Z (12 C.F. R. §

---

judges appointed under Article III. The U.S. Court of Appeals for the First Circuit has highlighted the narrowness of the Supreme Court's holding in *Stern* by invoking the *Stern* Court's own words:

> Article III of the Constitution provides that the judicial power of the United States may be vested only in courts whose judges enjoy the protections set forth in that Article. We conclude today that Congress, *in one isolated respect*, exceeded that limitation in the Bankruptcy Act of 1984. The Bankruptcy Court below lacked the constitutional authority to enter a final judgment on a state law counterclaim *that is not resolved in the process of ruling on a creditor's proof of claim.*

*DiVittorio v. HSBC Bank USA, NA (In re DiVittorio)*, 670 F.3d 273, 282 n.4 (1st Cir. 2012) (resolution of the MCCCDA claim necessary to determine whether the lender was entitled to relief from stay) (citing *Stern*, 131 S.Ct. at 2620) (emphasis added). *See also O'Connell v. Wells Fargo Bank, N.A. (In re O'Connell)*, 2012 WL 2685149, at *1 (Bankr. D. Mass. July 6, 2012) (MCCCDA claim necessarily resolved in determination of extent and security of bank's claim); *FNB Bank v. Carlton (In re Carlton)*, 2011 WL 3799885, at *1 & n.5 (Bankr. N.D. Ala. Aug. 26, 2011) (court could enter final order on TILA claim because outcome of TILA claim would affect reconsideration of allowance of bank's claim). The claims asserted by Ms. Acevedo in her complaint and claims objections **must** be resolved in order to determine the validity and amount of Wells Fargo's claim against the bankruptcy estate of Ms. Acevedo and thus my authority to enter final orders with regard to the complaint and claims objections is not circumscribed by the ruling in *Stern*.

7

226.1).[6] Like TILA, the MCCCDA was enacted to provide consumers with "a meaningful disclosure of credit terms." *Alger v. Countrywide Home Loans, Inc. (In re Alger)*, 464 B.R. 519 (Bankr. D. Mass. 2012) (quoting TILA, 15 U.S.C. § 1601(a)). Although "transactions subject to the MCCCDA are exempt from many of the provisions of TILA," *Cromwell v. Countrywide Home Loans, Inc. (In re Cromwell)*, 461 B.R. 99, 116 (Bankr. D. Mass. 2011),[7] cases interpreting TILA and its regulations are instructive in interpreting the MCCCDA and its regulations. *Mayo v. Key Fin. Serv., Inc.*, 424 Mass. 862, 864, 678 N.E.2d 1311 (1997).

Both TILA and the MCCCDA require lenders in certain types of loan transactions, including loans to refinance the mortgage on a primary residence, to afford borrowers the right to back out of the loan for any reason within three days following certain disclosures which are supposed to be delivered by the lender to the borrower at the loan closing. "The purpose of the three-day period, sometimes referred to as a 'cooling off' period, is 'to give the consumer the opportunity to reconsider any transaction which would have the serious consequence of encumbering the title to his home.'" *Fuller v. Deutsche Bank National Trust Company (In re Fuller)*, 642 F.3d 240, 241 -242 (1st Cir. 2011) (quoting S. Rep. No. 96–368, at 28 (1979), reprinted in 1980 U.S.C.C.A.N. 236, 264).

---

[6] "Regulation Z is the name of the body of regulations enacted by the Board of Governors of the Federal Reserve System interpreting TILA, pursuant to authority granted them in the statute." *Desrosiers v. Transamerica Financial Corp. (In re Desrosiers)*, 212 B.R. 716, 722 n.5 (Bankr. D. Mass. 1997).

[7] The Board of Governors of the Federal Reserve System, acting pursuant to its authority under § 1633 of TILA and the procedure established in 12 C.F.R. 226, App. B, has exempted credit transactions subject to the MCCCDA from chapters two and four of TILA to the extent the MCCCDA is not inconsistent with TILA. *See* 48 Fed. Reg. 14882, 14890 (April 6, 1983). *See also O'Connell*, 2012 WL 2685189, at *3 n.2 (Bankr. D. Mass. July 6, 2012); *Desrosiers*, 212 B.R. at 722 n.6. Chapter two of TILA encompasses § 1631 through § 1646. Section 1635 is TILA's rescission section and thus the MCCCDA, rather than TILA, applies.

8

Both TILA and the MCCCDA expand the time for a consumer to rescind a transaction if the required disclosures are not delivered. Under TILA the period expands to three years, 15 U.S.C. § 1635(f), while under the MCCCDA it expands to four.[8] MASS. GEN. LAWS ch. 140D, § 10(f). The expanded periods under both TILA and the MCCCDA are immediately terminated, however, "if the property is sold, including a sale at a foreclosure auction. *Id.*; 32 C.M.R. § 32.15(1)(c). *See also Hanson v. M & I Marshall and Ilsley Bank*, 737 F. Supp.2d 988, 991 (D. Minn. 2010) (citing cases).

Under the MCCCDA (as well as TILA) in order to satisfy the disclosure requirements so as to limit a borrower's right to rescind the transaction to three days, the lender must deliver to each borrower a form of notice of right to cancel in duplicate, 209 CMR § 32.32(2)(a), as well as a form finance charge disclosure that is accurate within the statutory tolerance for error. MASS.

---

[8] Some courts hold that a consumer is entitled to rescission even after the expanded period so long as rescission is used defensively as a recoupment device. As to whether a consumer is entitled to rescission under the MCCCDA after the four year period as recoupment against a lender's claim *compare Maxwell v. Fairbanks Capital Corp. (In re Maxwell)*, 281 B.R. 101, 124 (Bankr. D. Mass. 2002) (rescission may be asserted as a recoupment defense); *Fidler v. Central Cooperative Bank (In re Fidler)*, 226 B.R. 734, 737 (Bankr. D. Mass. 1998) (finding that the rescission claim asserted by debtor-plaintiffs was not an affirmative claim but one for rescission) reaffirming the holding of *Fidler v. Central Cooperative Bank (In re Fidler)*, 210 B.R. 411, 420 (Bankr. D. Mass. 1997) ("To demonstrate that a claim is being asserted in recoupment, the following elements must be satisfied: (1) the TILA [or CCCDA] violation and the creditor's debt arose from the same transaction, (2) [the claimant] is asserting her claim as a defense, and (3) the 'main action' is timely.") (internal quotation marks and citations omitted)); *with Kelly v. Deutsche Bank Nat. Trust Co.*, 789 F. Supp.2d 262, 266-67 (D. Mass. 2011) (mortgagor could not bring time-barred rescission claim as recoupment when it was really a counterclaim seeking affirmative action since rescission would unjustly enrich the mortgagor); *O'Connell*, 2012 WL 2685149, at *6 (rescission is not within doctrine of recoupment since recoupment permits one claim to reduce another claim arising from the same transaction while rescission would void the transaction).

9

GEN. LAWS ch. 140D, § 10(f). Provided that foreclosure proceedings have not been initiated, an understated finance charge is considered "accurate" if it is within one-half percent of the amount of credit extended. *Id.* at § 10(f)(2)(a). Once foreclosure proceedings are begun, however, the disclosed finance charge can be no more than thirty-five dollars less than the correct finance charge. *Id.* at § 10(i)(2). As foreclosure proceedings were undertaken by Wells Fargo against the Property, the applicable tolerance for error in this case is $35. The consequence of imperfect disclosure, like imperfect notice of the right to rescind, is that it opens the door to the expanded period to exercise the right to rescind.

### The Positions of the Parties

Although the complaint is brought in two counts, count I entitled "Failure to Disclose Finance Charge as Required Under the [MCCCDA]" and count II entitled "Determination of Extent of Mortgage Lien," claims are sprinkled throughout the recitations preliminary to the counts in a somewhat jumbled fashion. Trying to fit the puzzle pieces together as accurately as possible results in the following picture of Ms. Acevedo's claims.

Count I of the complaint, in which Ms. Acevedo seeks actual and statutory damages plus attorney's fees, appears to incorporate four claims. The first claim revolves around the Rescission Notice and while it is somewhat scattered and inconsistent, at bottom Ms. Acevedo appears to allege that at the closing of the refinance transaction she was not provided with two copies of the Rescission Notice as required by 209 CMR § 32.32(2)(a).

Second, Ms. Acevedo asserts that the amount actually financed by Option One exceeded the amount disclosed in the TIL Disclosure Statement by more than $35, which the parties agree is the margin for error available to Option One under applicable law because foreclosure

proceedings had begun by the time this adversary proceeding was initiated. Specifically, Ms. Acevedo claims that while she was charged $250 for recording fees (as set forth in line 1201 of the HUD-1 Settlement Statement), only $175 of that amount was actually spent by Option One or its agents for recording costs and thus $75 was in fact an undisclosed finance charge in violation of the MCCCDA.

Third, she points out that under applicable TILA or MCCCDA regulations Option One was required to assume that the index value[9] in effect on the date of the closing of the refinancing and upon which the loan's interest rate was determined would be "in effect for the life of the loan." She interprets "life of the loan" to include the additional thirty year term under the Balloon Payment Addendum. She alleges that Option One was required to disclose on the TIL Disclosure Statement that the future refinancing of the balloon payment of $158,600 due on maturity of her loan would carry an interest rate of 6.735% per annum for 30 years beginning in November 2036 and that her monthly payments would then be $1,027.10 for a total additional interest charge of $369,756.32. Since Option One did not disclose any of this on the TIL Disclosure Statement, Ms. Acevedo argues it violated the MCCCDA.

Fourth, she alleges that the annual percentage rate ("APR") required to be disclosed in the TIL Disclosure Statement was incorrect and in violation of the MCCCDA. The TIL Disclosure Statement indicated an APR of 8.021%. Ms. Acevedo claims that the disclosed rate,

---

[9] An index value in the context of an interest rate selection refers to any one of a number of periodically published indexes such as the London Interbank Offered Rate (LIBOR), the 11th District Cost of Funds Index (COFI), Cost of Savings Index (COSI) and the rates paid by the U.S. government on its debt obligations having various maturity dates (for example, the six month Treasury Bill also known as the six month T-Bill Rate or the 30-year Treasury bond rate also known as the 30-year T-bond rate).

11

assuming that the conditional refinancing interest rate is not included, should have been 8.32623%.

In count II of the complaint, Ms. Acevedo seeks a determination that Wells Fargo's mortgage is void based upon the Rescission Notice she sent to Wells Fargo's attorneys. Because Wells Fargo did not respond to the Notice, she asserts that the loan is rescinded and that Wells Fargo holds an unsecured claim dischargeable in her bankruptcy. Alternatively, she contends that she can modify Wells Fargo's secured claim in her chapter 13 plan by stripping down the balance of its loan secured by the mortgage on the Property to the value of the Property.

Wells Fargo denies that Option One violated the MCCCDA in connection with the loan closing and seeks summary judgment on both counts of the complaint. Wells Fargo asserts that the $75 which Ms. Acevedo claims is an undisclosed finance charge is actually a discharge tracking fee which the closing attorney charged for work he ultimately performed to track the discharge in order to ensure that Option One received a first lien position on the Property as a result of the refinancing. The closing attorney disclosed the $75 tracking fee on line 1201 of the HUD-1 Disclosure Statement at Option One's direction. Relying on 12 CFR § 226.4(a) and § 226.4(c)(7)(i) Wells Fargo asserts that the $75 was actually part of the amount financed, not a finance charge. Wells Fargo also maintains that the Balloon Payment Addendum gave rise merely to a conditional right to refinance that did not trigger the need to disclose on the TIL Disclosure Statement issued at the time of the 2006 refinance transaction what a hypothetical refinancing in 2036 would cost. Moreover, Wells Fargo asserts that the interest rate for such a future refinancing would not be based on Fannie Mae's 2006 30-year mortgage rate index value as Ms. Acevedo alleges. Based solely on its arguments that the finance charges in connection

12

with the 2006 refinance transaction were correctly disclosed, Wells Fargo concludes that Ms. Acevedo did not have an extended period of time within which to rescind the transaction. Wells Fargo does not address Ms. Acevedo's claim that she did not receive two copies of the Rescission Notice.

In her opposition to Wells Fargo's motion, Ms. Acevedo fleshes out her argument that she was charged an undisclosed finance charge of $75 by asserting that the payoff figure for Option One's earlier mortgage included a $75 fee to record the mortgage discharge. Thus, there appear to have been three $75 charges: one included in the Payoff Statement which was the basis of the $264,915.30 payment to Option One reflected on line 104 of the HUD-1 Settlement Statement; one reflected on line 1201 of the same Statement for "Recording," and the third listed on line 1303 of the Statement as a fee to Attorney DiFonte's firm for "Final Rundown and Record."

### Summary Judgment Standard

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of a material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 65(a), made applicable by Fed. R. Bankr.P. 7056. A "genuine" issue is one supported by such evidence that "a reasonable jury, drawing favorable inferences," could resolve in favor of the nonmoving party. *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir.1999) (quoting *Smith v. F.W. Morse & Co.*, 76 F.3d 413, 427 (1st Cir.1996)). "Material" means that a disputed fact has "the potential to change the outcome of the suit" under the governing law if the dispute is resolved in favor of the nonmovant. *McCarthy v. NW. Airlines, Inc.* 56 F.3d 313, 314–15 (1st Cir.1995). The moving

party bears the initial responsibility of informing the court of the basis for its motion and "identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "[A] party seeking summary judgment always bears the initial responsibility of informing the ... court of the basis for its motion, and ... [must] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Only if the record, viewed in that manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." *Cadle Co. v. Hayes*, 116 F.3d 957, 959 (1st Cir. 1997).

## Discussion

Based on the record before me, it appears that Ms. Acevedo may have been charged three separate $75 fees: (i) one included as a recording fee in the pay-off figure set forth in the October 17, 2006 Option One Payoff Statement; (ii) one disclosed on line 1201 of the HUD-1 as "Recording Fees" under the general heading on line 1200 of "Government Recording and Transfer Fees"; and (iii) one on the HUD-1's line 1303 labeled "Final Rundown & Record." While Mr. DiFonte testified in his affidavit that the $75 on line 1201 was actually a discharge tracking fee paid to his firm to ensure that Option One's prior mortgage was properly discharged, neither the recording fee included in Option One's October 17, 2006 Payoff Statement nor the charge on line 1302 of the HUD-1 is addressed in Mr. DiFonte's affidavit. From the record before me, I cannot determine whether all charges that should have been included in the amount financed were actually disclosed and whether there in fact was a fee charged for a service not

14

rendered and thus was a hidden finance charge. I also note that Ms. Acevedo alleges that the amount paid to Option One to pay off its prior note according to the HUD-1 is greater than the amount set forth in Option One's October 17, 2006 Payoff Statement and that Wells Fargo has failed to address this discrepancy. Although Ms. Acevedo's complaint is hardly a model of clarity, she also alleges that she did not receive the required number of Rescission Notices and an accurate TIL Disclosure Statement, which allegations are also left unaddressed by Wells Fargo. Under these circumstances, Wells Fargo is not entitled to summary judgment.

An additional point not raised by the parties is the impact that the foreclosure sale of the Property had on the time period during which Ms. Acevedo could rightfully rescind the refinance transaction. As discussed above, under applicable regulations a foreclosure sale terminates the expanded right to rescind. Having concluded that summary judgment is not appropriate, I need not explore this question now. It nevertheless remains a potential issue for future consideration. I note that in the Second Adversary Proceeding, Ms. Acevedo attacks the validity of the foreclosure sale by alleging that it was not conducted in a commercially reasonable manner because, among other things, it was improperly noticed. Since under Massachusetts law a foreclosure sale conducted upon flawed notice is void, not just voidable, *U.S. Bank Nat. Ass'n v. Ibanez*, 458 Mass. 637, 646-47, 941 n.Ed.2d 40, 49-50 (2011), if Ms. Acevedo prevails in her assertion of improper notice of the foreclosure, there may be no need to determine whether the foreclosure sale terminated her extended right to rescind the refinance transaction. For this reason, pursuant to Fed. R. Civ. P. 42(a), made applicable to this proceeding by Fed. R. Bankr. P. 7042, I will consolidate with this adversary proceeding count III of the complaint in the Second Adversary Proceeding, which is the count to set aside the foreclosure sale on the grounds that it

was not conducted in a commercially reasonable manner.

## Conclusion

For all the foregoing reasons, Wells Fargo's motion for summary judgment will be denied and count III of the complaint in the Second Adversary Proceeding will be consolidated with this adversary proceeding.

Separate orders will issue.

Dated: August 7, 2012

By the Court,

Melvin S. Hoffman
U.S. Bankruptcy Judge

cc:   Laird Heal, Esq.
      Worcester, MA
      Counsel for Leslie Acevedo

      Joseph Butler, Esq.
      Boston, MA
      Counsel for Wells Fargo Bank, Trustee